```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Scott McDaniel

    **v.**                                          Case No. 04-cv-311-PB
                                                          Opinion No. 2007 DNH 094

SkillSoft Corporation

## MEMORANDUM AND ORDER

Scott McDaniel charges that he was sexually harassed by his supervisor, Rob Brown, while both men worked at SkillSoft Corporation's ("SkillSoft") office in Nashua, New Hampshire. McDaniel seeks damages for alleged violations of Title VII of the Civil Rights Act of 1964 and the New Hampshire Civil Rights Act, as well as for the common law torts of intentional infliction of emotional distress and constructive discharge. Because the undisputed evidence establishes that SkillSoft has properly asserted a Ellerth-Faragher affirmative defense, I grant its motion for summary judgment.

### I. BACKGROUND

SkillSoft, a company that provides computer-based training to business and information technology professionals, hired

McDaniel in July 2000 as an inside sales representative.  On McDaniel's first day of work at SkillSoft, his supervisor reviewed SkillSoft's anti-discrimination policy with him on the company's computer system, and the two read through it together.[1]  In November 2000, Rob Brown became McDaniel's supervisor in the inside sales department in the company's Nashua, New Hampshire office.

According to McDaniel, Brown sexually harassed him over an extended period of time by making suggestive comments, sending him e-mails laden with sexual content, and touching him inappropriately.  In March 2001, McDaniel sought mental health counseling.  On September 21, 2001, at the suggestion of his doctor, McDaniel stopped working and started collecting disability benefits.

McDaniel first told SkillSoft's human resources department about Brown's conduct in a telephone conversation on October 1, 2001 after he was already on leave.  At the department's request, he set forth his allegations in writing in a letter dated October

---

[1] Additionally, in his deposition, McDaniel acknowledged that he knew how to return to the policy on the computer system if he needed to review it.

1, 2001. SkillSoft received McDaniel's letter on October 11, 2001 and Thomas McDonald, SkillSoft's Chief Financial Officer, responded by letter the following day. In the letter, McDonald indicated that SkillSoft was taking McDaniel's concerns "very seriously" and asked to interview McDaniel later that week as part of an investigation into his allegations. The letter also stated, "Please rest assured that you will not be retaliated against in any way for having filed this complaint."

SkillSoft promptly investigated McDaniel's allegations by interviewing McDaniel and Brown separately, and reviewing e-mail correspondence between McDaniel and Brown. At the conclusion of its investigation, SkillSoft determined that although no sexual harassment had occurred, Brown's conduct had been unprofessional. Accordingly, SkillSoft terminated Brown by giving him the opportunity to resign on October 29, 2001.

At the time of Brown's departure from SkillSoft, McDaniel was still on leave. Thereafter, McDaniel remained on leave for an extended period, ultimately exhausting both his short-term and long-term disability benefits. McDaniel has never resigned from SkillSoft and acknowledges that no one from SkillSoft ever told him that his employment was terminated; nor has he received any

letters to that effect from SkillSoft.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable inferences and all credible issues are resolved in favor of the nonmoving party. See Anderson, 477 U.S. at 255-56.

Once the moving party has properly carried its burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).

### III.  ANALYSIS

SkillSoft seeks to assert an Ellerth-Faragher affirmative defense, claiming that McDaniel suffered no tangible employment action, that SkillSoft exercised reasonable care to prevent and correct promptly any harassing behavior, and that McDaniel unreasonably failed to take advantage of preventive or corrective opportunities afforded him by SkillSoft.  McDaniel responds by contending that facts that are material to SkillSoft's defense remain in genuine dispute.  In the sections below, I describe the law governing the Ellerth-Faragher affirmative defense and then apply that legal framework to the facts of this case.  Because I conclude that SkillSoft has met its burden as to each element of the defense, I grant its motion for summary judgment.

A.      **Legal Framework of the Ellerth-Faragher Affirmative Defense**

In certain Title VII cases, "a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 86 (1st Cir. 2006) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) (internal quotation marks omitted).  This defense is known as the Ellerth-Faragher defense.  The defense is only available, however, "when the supervisor's harassment [has not] culminate[d] in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Id. (quoting Faragher, 524 U.S. at 808) (internal quotation marks omitted).

When available, the defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. (quoting Faragher, 524 U.S. at 807) (internal quotation marks omitted). The first element "typically is addressed by proof that the employer 'had promulgated an antiharassment policy with [a]

-6-

complaint procedure.'" Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 20 (1st Cir. 2002) (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). With respect to the second element, "proof that the employee failed to meet his obligation of using reasonable care is not limited to an unreasonable failure to use such a procedure, although such proof will normally suffice to meet the employer's burden." Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27, 34 (1st Cir. 2003) (citing Faragher, 524 U.S. at 807-08) (additional citations omitted).

As it is an affirmative defense, "[t]he employer bears the burden of proof as to both elements." Arrieta-Colon, 434 F.3d at 86 (citing Faragher, 524 U.S. at 807-08). Despite this, "summary judgment for the employer is still possible so long as raw facts are undisputed or assumed in favor of the plaintiff." Reed, 333 F.3d at 34. However, "the judgment call as to reasonableness is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." Id. (citation omitted). It is against this legal framework that I now turn to McDaniel's claims.

### B. Application

#### 1. Availability of the Defense: Was There a Tangible Employment Action?

Here, SkillSoft contends that the Ellerth–Faragher defense is available because McDaniel has not suffered a tangible employment action. In support of this argument, SkillSoft points to evidence that McDaniel was never terminated from SkillSoft. Affidavit of Thomas McDonald, Doc. 19, Attach. 7 ("McDonald Aff.") at 2. Moreover, McDaniel does not contend that he was demoted or undesirably reassigned.

In short, McDaniel has not presented sufficient evidence to rebut SkillSoft's showing that McDaniel was not subjected to a tangible employment action. Rather, McDaniel's sole argument on this point is his assertion that while he was collecting disability benefits, "[his] [mental health] care provider was never forwarded any additional inquiries by SkillSoft as to [his] ability to return to work" and that he "received information from SkillSoft regarding COBRA enrollment for ongoing health insurance coverage, reasonably leading [him] to believe that his employment had been terminated." Plaintiff's Obj. at 6. For obvious reasons, such bald assertions are insufficient to rebut the

evidence SkillSoft has presented with respect to this issue. Moreover, McDaniel's claim regarding COBRA enrollment is belied by his own deposition testimony, where he clearly acknowledges that he was informed of the need to pay for COBRA enrollment not by SkillSoft, but by his disability insurance company, presumably because his benefits had expired.  Deposition of A.J. McDaniel, Doc. 19, Attach. 3 ("McDaniel Dep.") at 217-19.  Because SkillSoft has shown by a preponderance of the evidence that it did not subject McDaniel to a tangible employment action, I hold that SkillSoft is entitled to assert the <u>Ellerth</u>-<u>Faragher</u> defense.

   **2.   <u>First Element: Did SkillSoft Exercise Reasonable Care?</u>**

   With respect to the first element of the defense--i.e., whether SkillSoft exercised reasonable care to prevent and correct promptly any harassing behavior--SkillSoft has shown that it promulgated and publicized an anti-discrimination policy that prohibited unlawful discrimination, including unlawful sexual harassment.  McDonald Aff. at 1.  This policy contained a complaint procedure for employees to report incidents of sexual harassment.  <u>Id.</u>  McDaniel does not dispute this contention and, in fact, admitted during his deposition that he reviewed the

policy when he began working at SkillSoft and that he knew how to access the policy if he wanted to find it again. McDaniel Dep. at 70-73. Thus, I hold that SkillSoft has satisfied its burden with respect to the first element of the <u>Ellerth</u>-<u>Faragher</u> defense. <u>See</u> <u>Reed</u>, 333 F.3d at 34-35 (affirming district court's summary judgment determination that defendant satisfied the first element of the defense by promulgating an anti-harassment policy with a complaint procedure).

### 3. **Second Element: Did McDaniel Unreasonably Fail to Take Advantage of Preventive or Corrective Opportunities?**

I now turn to the second element of the defense--i.e., whether McDaniel unreasonably failed to take advantage of the complaint procedure in SkillSoft's anti-discrimination policy. With respect to this element, SkillSoft has presented evidence, which McDaniel does not dispute, that McDaniel did not report Brown's alleged harassment to SkillSoft until October 1, 2001, after he was already on leave. McDonald Aff. at 1. Thus, SkillSoft argues, McDaniel unreasonably failed to take advantage of SkillSoft's complaint procedure, thus rendering SkillSoft unable to prevent or correct the alleged harassment.

In his brief, McDaniel offers only a cursory explanation for his failure to follow the procedures.  Specifically, he asserts that he "felt trapped by the structure of SkillSoft and by Mr. Brown's capacity as his supervisor," that he believed another employee who complained to Human Resources regarding Mr. Brown had been terminated, and that a co-worker advised him to refrain from making complaints to the Human Resources department out of concern for McDaniel's job security.  However, as the First Circuit has explained, "a nebulous fear of retaliation is not an adequate basis for remaining silent."  See Reed, 333 F.3d at 36 (citing Matvia v. Bald Head Island Mgmt., Inc. 259 F.3d 261, 270 (4th Cir. 2001) (internal quotation marks omitted)).  Here, McDaniel has presented no evidence of anything but a "nebulous fear."  Simply pointing to the fact that Brown was his supervisor, to sheer speculation as to why a co-worker was terminated, and to a conversation he had with a co-worker evidences nothing more the "nebulous fear," deemed insufficient by the First Circuit to rebut SkillSoft's showing on this point.  Accordingly, I hold that SkillSoft has met its burden with respect to the second element of the defense.

## IV. CONCLUSION

Because SkillSoft has shown by a preponderance of the evidence that McDaniel did not suffer a tangible employment action, that SkillSoft exercised reasonable care to prevent or correct sexual harassment, and that McDaniel unreasonably failed to take advantage of SkillSoft's preventive and corrective opportunities, I hold that SkillSoft has successfully asserted a Ellerth–Faragher defense.  Accordingly, I grant SkillSoft's motion for summary judgment (Doc. No. 57) as to McDaniel's Title VII claim.  I decline to exercise supplemental jurisdiction over his related state law claims.  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 14, 2007

cc: Mary Notaris, Esq.
    Edmond J. Ford, Esq.
    Elizabeth A. Bailey, Esq.
    Christopher Cole, Esq.